Jonah A. Grossbardt (Pro Hac Vice)
**SRIPLAW**
1801 Century Park East
Suite 1100
Los Angeles, CA  90067
323.364.6565 – Telephone
561.404.4353 – Facsimile
jonah.grossbardt@sriplaw.com

Joel B. Rothman (Pro Hac Vice)
**SRIPLAW**
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile
joel.rothman@sriplaw.com

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
**RANDAZZA LEGAL GROUP, PLLC**
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV  89117
Telephone:  702.420.2001
Facsimile:  305.437.7662
ecf@randazza.com

*Attorneys for Defendant*
*CELSIUS HOLDINGS, INC.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROCKSTAR, INC., | ) Case No.:  2:18-cv-02371 |
| | ) |
| Plaintiff, | ) **DEFENDANT CELSIUS HOLDINGS,** |
| | ) **INC.'S MOTION FOR JUDGMENT ON** |
| vs. | ) **THE PLEADINGS OR FOR SUMMARY** |
| | ) **JUDGMENT, CONCISE STATEMENT** |
| CELSIUS HOLDINGS, INC., | ) **OF FACTS, AND MEMORANDUM OF** |
| | ) **LAW AND POINTS AND AUTHORITIES** |
| Defendant. | ) |
| _____ | ) |

1

**TABLE OF CONTENTS**

I.    INTRODUCTION.............................................................................. 1

II.   CONCISE STATEMENT OF UNCONTESTED AND ADMITTED FACTS ............. 3

III.  LEGAL STANDARD ...................................................................... 7

   A.   MOTION FOR JUDGMENT ON THE PLEADINGS ....................................... 7

   B.   MOTION FOR SUMMARY JUDGMENT ..................................................... 8

IV.  ARGUMENT .................................................................................... 9

   A.   ROCKSTAR HAS PRODUCED NO DOCUMENTS AND TAKEN NO
   DISCOVERY; ROCKSTAR HAS NO FACTS WITH WHICH TO OPPOSE
   SUMMARY JUDGMENT ............................................................................... 9

   B.   ROCKSTAR LACKS A COMPETITIVE INJURY SUFFICIENT FOR FALSE
   ADVERTISING STANDING ............................................................................ 10

   C.   CELSIUS' SUBJECTIVE CLAIMS ARE NOT ACTIONABLE.......................... 13

   D.   ROCKSTAR CANNOT ENFORCE VIOLATIONS OF THE FDCA WHICH ARE
   PREEMPTED ............................................................................................... 18

      1.   THE FDA HAS REGULATED LABELING FOR THE TERM "HEALTHY" ...... 23

      2.   THE CLAIM "HEALTHY ENERGY" IS A PERMITTED STRUCTURE
      FUNCTION CLAIM REGULATED BY FDA ...................................................... 24

      3.   THE FDA HAS REGULATED LABELING USING IMAGES OF FRUIT......... 26

V.   ROCKSTAR'S STATE LAW CLAIMS SHOULD BE DISMISSED OR THE COURT
SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THEM 28

VI.  CONCLUSION .......................................................................... 28

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

1

**Cases**

2

*A.H. Lundberg Assocs. v. TSI, Inc.*, No. C14-1160JLR, 2014 U.S. Dist. LEXIS
149603 (W.D. Wash. Oct. 20, 2014) ........................................................ 13, 14

*Alexander v. Falk*, 2019 U.S. Dist. LEXIS 132201 (D. Nev. August 7, 2019 ...... 28

*American Express Travel Related Services Co., Inc. v. Mastercard
International, Inc.*, 776 F. Supp. 787 (S.D.N.Y. 1991) .................................... 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................... 8

*Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992 (N.D. Cal. 2013)
.......................................................................................................................... 12

*Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x
652 (9th Cir. 2010) ....................................................................................... 13, 14

*Arcure v. Kellogg Co.*, No. 2:10-cv-192-FtM-36SPC, 2011 U.S. Dist. LEXIS
165996 (M.D. Fla. Mar. 29, 2011) ................................................................. 17

*Aristocrat Techs., Inc. v. High Impact Design & Entm't*, 2009 U.S. Dist. Lexis
53306 (D. Nev. June 22, 2009) ...................................................................... 28

B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 258 F.3d 578 (7th Cir. 2001) .. 13

*Baker v. ADT Corp.*, No. 15-CV-2038, 2015 U.S. Dist. LEXIS 180138 (C.D. Ill.
Oct. 5, 2015) ................................................................................................. 17

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 125 S. Ct. 1788, 161 L. Ed.
2d 687 (2005) ................................................................................................ 23

*Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015
U.S. Dist. LEXIS 74905 (E.D. Mo. June 10, 2015) ....................................... 16

*Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F. Supp. 1201 (S.D.N.Y.
1986) .............................................................................................................. 14

*Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 U.S. Dist.
LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ........................................ 18, 19, 20, 23

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir.
2011) ............................................................................................................... 7

*Carnegie-Mellon v. Cohill*, 484 U.S. 343 (1988) ............................................. 28

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Celsius' Motion for Judgment on the Pleadings and for Summary Judgment
2:18-cv-02371-GMN-NJK

*Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012) ........................................................................................ 21

*Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939 (3rd Cir. 1993) ............................ 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................. 8

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ....... ................................................................................................... 22, 23

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ........................................... 19

*Chicanos Por la Causa, Inc. v. Napolitano*, 544 F.3d 976 (9th Cir. 2008) .... 19

*Cook, Perkiss & Liehe, Inc. v. Northern Calif. Collection Service, Inc.*, 911 F.2d 242 (9th Cir. 1990) ...................................................... 14, 17

*Cytyc Corp. v. Neuromedical Sys.*, 12 F. Supp. 2d 296 (S.D.N.Y. 1998) ....... 14

*Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 U.S. Dist. LEXIS 90847 (N.D. Cal. June 28, 2012) ........................................................ 24, 25

*Fisher v. Monster Bev. Corp.*, No. EDCV 12-02188-VAP (OPX), 2013 U.S. Dist. LEXIS 130789 (C.D. Cal. July 9, 2013) ...................................... 20, 22

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) ............................................ 7

*Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 U.S. Dist. LEXIS 29326 (N.D. Cal. Mar. 10, 2015) ............................................................ 22

*Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ........... 16

*Hansen Bev. Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG (POR), 2009 U.S. Dist. LEXIS 127605 (S.D. Cal. Dec. 22, 2009) ............................... 19

*Healthier Choice Flooring, LLC v. CCA Glob. Partners, Inc.*, No. 1:11-CV-2504-CAP, 2013 U.S. Dist. LEXIS 193200 (N.D. Ga. Mar. 5, 2013) ................ 15

*Hoffman v. Nordic Naturals, Inc.*, No. 12-CV-05870 SDW MCA, 2014 U.S. Dist. LEXIS 53125, 2014 WL 1515602 (D.N.J. Apr. 17, 2014) ........................ 21

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 U.S. Dist. LEXIS 149732 (C.D. Cal. Sep. 4, 2014) ......... 20, 21, 25

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. CV 16-1442 PSG (MRWx), 2017 U.S. Dist. LEXIS 174394 (C.D. Cal. Oct. 10, 2017) . 27

*Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013) ................................................................. 18

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005) ........................................................................... 11

*Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d Cir. 1980) .... 12

*Kaiser Cement Corp. v. Fischbach and Moore, Inc.*, 793 F.2d 1100 (9th Cir. 1986) .......................................................................................................... 8

*Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 122 Cal. Rptr. 2d 72 (2002) ..................................................................................................... 22

*Kaur v. Citibank, N.A.*, 2014 WL 3756136 (E.D. Cal. July 30, 2014) ................. 7

*Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) ............... 20, 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ....
............................................................................................................. 10, 11

*Lipton v. Nature Co., 71 F.3d 464 (2d Cir. 1995)* ....................................... 13, 14

*McKinniss v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sep. 19, 2007) ................................................................. 26

*McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 U.S. Dist. LEXIS 96108, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ..... 26

*Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013) ................................................................. 18

*Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038 (9th Cir. 2008) ............. 13, 15

*Nutritional Health Alliance v. Shalala*, 144 F.3d 220 (2d Cir. 1998) ............. 20

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301 NC, 2016 U.S. Dist. LEXIS 55601 (N.D. Cal. Apr. 26, 2016) 16

*Pom Wonderful LLC v. Coca Cola Co.*, 727 F. Supp. 2d 849 (C.D. Cal. 2010)
.............................................................................................................. 14

*Pratt v. Whole Foods Mkt. California, Inc.*, No. 5:12-CV-05652-EJD, 2014 U.S. Dist. LEXIS 46409, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ................... 23

*Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1988) 14

*Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 U.S. Dist. LEXIS 15868 (N.D. Cal. Feb. 8, 2016) .................................................................. 16

*Schwarzer, Tashima & Wagstaffe*, Federal Civil Procedure Before Trial §§ 9:211-9:213 (2016 ed.) ...................................................................... 7

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626 9th Cir. 1987) ...................................................................................... 8

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609 (9th Cir. 2016) ............................................................................................ 20

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) ....... 11, 12

*Trujillo v. Walgreen Co.*, No. 13 CV 1852, 2013 U.S. Dist. LEXIS 112404, 2013 WL 4047717 (N.D. Ill. Aug. 9, 2013) ................................................ 21

*Trump Ruffin Commer., LLC v. Local Joint Exec. Bd. Las Vegas*, 2016 U.S. Dist. LEXIS 104087 (D. NV. August 8, 2016) .................................... 28

*Tylka v. Gerber Prods, Co.*, 1999 U.S. Dist. LEXIS 10718 (N.D. Ill., July 1, 1999) ............................................................................................ 17

*Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ........ 26

*W.L. Gore & Associates, Inc. v. Totes, Inc.*, 788 F. Supp. 800 (D. Del. 1992) 15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .......................... 16

*Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) ............ 16

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............
.................................................................................... 15, 17, 18

*Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM (AJWx), 2011 U.S. Dist. LEXIS 109952, 2011 WL 104555 (C.D. Cal. Mar. 14, 2011) ............... 21, 24, 27

**Statutes**

15 U.S.C. § 1114(a) .................................................................................. 1

15 U.S.C. § 1125(a) ............................................................................. 1, 13

21 U.S.C. § 301 ...................................................................................... 19

21 U.S.C. § 321(ff) ................................................................................. 25

21 U.S.C. § 343 ............................................................ 20

21 U.S.C. § 343-1 ......................................................... 20

21 U.S.C. § 393(b)(2)(A) ............................................... 19

Dietary Supplement Health and Education Act of 1994 (DSHEA)..... 3, 24, 25

Food, Drug, and Cosmetics Act ("FDCA") ........................... passim

Nev. Rev. Stat. § 598.0915 ............................................. 1

Nutrition Labeling and Education Act ("NLEA") ................... passim

**Rules**

21 C.F.R. § 100.1(c)(4) ................................................ 21

21 C.F.R. § 101.22(i) ................................................... 27

21 C.F.R. § 101.22(i)(1)(i-iii) .................................... 22, 26, 27

21 C.F.R. § 101.65(d)(2) ............................................ passim

21 C.F.R. § 101.93(f) ................................................. 24

Fed. R. Civ. P. 12(b)(6) .............................................. 17

Fed. R. Civ. P. 12(c) ................................................. 1, 7

Fed. R. Civ. P. 30(b)(6) .............................................. 10

Fed. R. Civ. P. 56 ...................................................... 1

Fed. R. Civ. P. 56(a) ................................................... 8

Fed. R. Civ. P. 56(e) ................................................... 8

Celsius' Motion for Judgment on the Pleadings and for Summary Judgment
2:18-cv-02371-GMN-NJK

1

## I.    INTRODUCTION

2

Defendant, Celsius Holdings, Inc. ("Celsius"), pursuant to Federal

3

Rule 12(c) for its Motion for Judgment on the Pleadings, and pursuant to

4

and Rule 56 for its Motion for Summary Judgment, files this motion seeking

5

judgment in its favor on all counts of the Complaint filed by Rockstar, Inc.

6

("Rockstar"), and in support files its Concise Statement of Facts and

7

Memorandum of Law and Points and Authorities.

8

Rockstar and Celsius are competitors in the "energy drink" market.

9

Rockstar sells 25 different flavors of a beverage in 16 ounce cans that

10

contain the claim "Rockstar Energy Drink is designed for those who lead

11

active lifestyles." Celsius sells beverages labeled as dietary supplements in

12

12 ounce cans depicting images of fruit to show the flavors contained

13

therein.  Celsius is marketed to the fitness enthusiast with the claim that

14

Celsius provides "healthy energy."

15

16

Rockstar sued Celsius in a Complaint (ECF #1) alleging False

17

Advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

18

1125(a) in Count I[1]; Deceptive Trade Practices in violation of Nev. Rev.

19

Stat. § 598.0915 in Count II; and Nevada Common Law Unfair Competition

20

in Count III. Celsius is entitled to judgment on the pleadings or summary

21

judgment on Rockstar's claim in Count I under the Lanham Act for three

22

reasons.

23

---

[1] The title of Rockstar's Count I incorrectly refers to 15 U.S.C. 1114(a), but the body of the count
refers to 15 U.S.C. § 1125(a).

24

*First,* Rockstar cannot demonstrate that it suffered an injury-in-fact necessary to recover for false advertising under the Lanham Act. Rockstar has not alleged, and cannot show, it suffered a commercial injury based upon a misrepresentation about Celsius' product. Rockstar has not alleged, and cannot show, that any injury it claims to have suffered is a competitive injury. Rockstar has not claimed, and cannot demonstrate, an injury to its commercial interests in sales or business reputation proximately caused by Celsius or any of its claims regarding its product. Without an injury-in-fact, Rockstar cannot prevail.

*Second,* the subjective advertising claims made by Celsius are puffery and non-actionable. Subjective claims are not measurable or quantifiable; Celsius' subjective claims are puffery.  The claim that Celsius provides "healthy energy" is not quantifiable or measurable. The images of fruit on labels of Celsius showing the product's flavors is not quantifiable or measurable. Both claims cannot be proven true or false. The Lanham Act provides no false advertising remedy for subjective claims since they cannot be shown to be false.

*Third,* Rockstar's complaint is an improper attempt at enforcement by a private party of violations of the Food, Drug & Cosmetics Act ("FDCA") Rockstar's complaint asserts that Celsius' product is misbranded under the FDCA and that this misbranding is the basis for its claims. (ECF #1 at 10-12). However, there is no private right of action under the FDCA.

Rockstar's claims against Celsius are precluded by the FDCA and FDA rulemaking regarding dietary supplements and dietary supplement claims. Rockstar's claims are not complementary to the FDCA as amended by DSHEA; Rockstar's claims displace remedies provided for in the FDCA. Congress never authorized Rockstar to be a private enforcer claiming a product is misbranded. The FDA has outlined when it is permissible to write "healthy" on a label and when it is permissible to show an image of a fruit to denote flavoring. Celsius' products meet those guidelines. Rockstar's claims are preempted.

Finally, Rockstar's state law claims fail for the same reasons as its Lanham Act claims. In addition, Rockstar's state law claims are preempted. Alternatively, upon dismissal of Rockstar's Lanham Act claim, upon which subject matter jurisdiction is based, this Court should exercise its supplemental jurisdictional discretion not to hear Rockstar's state law claims.

## II.    CONCISE STATEMENT OF UNCONTESTED AND ADMITTED FACTS

1.    Rockstar and Celsius are competitors in the "energy drink" market. (ECF #1, at 2).

2.    Rockstar sells 25 different flavors of a conventional beverage in 16 ounce cans at "100,000 points of distribution throughout the country." (ECF #1, at 3).

3.     Rockstar makes the following express claim on its product cans: "ROCKSTAR ENERGY DRINK IS DESIGNED FOR THOSE WHO LEAD ACTIVE LIFESTYLES." (Declaration of Joel B. Rothman, ¶ 2).

4.     Celsius sells a liquid dietary supplement in a variety of different flavors in 12 ounce cans. (Declaration of John Fieldly, ¶ 2).

5.     Celsius is specifically marketed to the fitness enthusiast market.  (Fieldly Decl., ¶ 3).

6.     Celsius is advertised, marketed and sold as a dietary supplement consumed as a pre-workout drink geared towards people that exercise. (Fieldly Decl., ¶ 4).

7.     Celsius is regulated by the FDA under the Dietary Supplement Health and Education Act (DSHEA) amendments to the Food, Drug & Cosmetics Act (FDCA). (Fieldly Decl., ¶ 5).

8.     Celsius complies with all the applicable requirements of the FDCA and DSHEA. (Fieldly Decl., ¶ 6).

9.     The Nutrition Labeling and Education Act (NLEA) applies to Celsius. (Fieldly Decl., ¶ 7).

10.     Celsius complies with all the applicable requirements of the NLEA. (Fieldly Decl., ¶ 8).

11.     The principal display panel of all Celsius products contains the statement of identity "dietary supplement". (Fieldly Decl., ¶ 9).

12.     The principal display panel of all Celsius products show images of fruit for purposes of indicating to the consumer the flavors of the contents. (Fieldly Decl., ¶ 10).

13.     Celsius' claim that its product provides "healthy energy" is a marketing statement designed to express the idea that Celsius is designed for, advertised to, and marketed to the health conscious consumer that exercises. (Fieldly Decl., ¶ 11).

14.     Celsius' claim that its product provides "healthy energy" is a subjective claim that is not measurable. (Fieldly Decl., ¶ 12).

15.     Celsius has never attempted to measure "healthy energy" either the improvement to health provided by consuming its product, or the amount of energy provided by consuming its product, because neither is measurable. (Fieldly Decl., ¶ 13).

16.     Celsius' claim that its product, when used in connection with diet and exercise, helps burn calories; in fact, when Celsius is consumed before exercise, participants in clinical studies of Celsius burned more calories than a control group that consumed water. (Fieldly Decl., ¶ 14).

17.     The clinical studies for Celsius examined both the short term and long term effects of Celsius consumption, both when combined with exercise, and without exercise, in both men and women. The conclusion drawn from these studies is that consumption of Celsius, prior to exercise, increases metabolism, and that this metabolism boost translates into

physiological benefits including fat loss, body fat percentage decrease, greater endurance and resistance to fatigue. The studies for Celsius document this effect on the structure and function of the body and substantiate the Celsius claim that consumption of Celsius provides "healthy energy." (Fieldly Decl., ¶ 15).

18.     Celsius' claim that its product provides "energy" is a structure function claim permitted under DSHEA and substantiated by the clinical studies for Celsius. (Fieldly Decl., ¶ 16).

19.     Celsius is not aware of any instances in which consumers who purchased Celsius' products did so mistakenly based upon the Celsius claim "healthy energy." (Fieldly Decl., ¶ 17).

20.     Celsius is not aware of any instances in which consumers who purchased Celsius' products did so mistakenly believing that the contents contained the fruit or fruit juice shown on the label. (Fieldly Decl., ¶ 18).

21.     Celsius is not aware of any instances in which Celsius' claims for its products harmed Rockstar's business. (Fieldly Decl., ¶ 19).

22.     Celsius is not aware of any instances where a consumer was misled by the claim "healthy energy" or the images of fruit on the label of Celsius. (Fieldly Decl., ¶ 20).

23.     Celsius is low fat or low in saturated fat; in fact, Celsius contains no fat at all. Celsius also contains at least 10 percent of daily

value of vitamin C. This allows Celsius to make the implied nutrient content

claim "healthy" as provided in 21 C.F.R. § 101.65(d)(2). (Fieldly Decl., ¶ 21).

### III.   LEGAL STANDARD

### A.   MOTION FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed -- but early enough not to

delay trial -- a party may move for judgment on the pleadings." Fed. R.

Civ. P. 12(c). A motion for judgment on the pleadings is "functionally

identical" to a motion to dismiss, and "the same standard of review

applies [to both motions]." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.,*

*Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (internal quotations omitted).

Upon either motion, a court may consider the pleadings

themselves, documents appended thereto or referenced therein, and

any other matters subject to judicial notice. *Kaur v. Citibank, N.A.*, 2014 WL

3756136, *2 (E.D. Cal. July 30, 2014); accord *Schwarzer, Tashima &*

*Wagstaffe*, Federal Civil Procedure Before Trial §§ 9:211-9:213 (2016 ed.).

Judgment on the pleadings is proper when, after viewing the

pleadings in the light most favorable to the non-moving party, "there is no

issue of material fact in dispute, and the moving party is entitled to

judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th

Cir. 2009).

**B.     MOTION FOR SUMMARY JUDGMENT**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A plaintiff opposing summary judgment must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Kaiser Cement Corp. v. Fischbach and Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986). "Clearly, the non-moving party must do more than simply show there is some metaphysical doubt as to the material fact." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). The nonmoving party cannot rely on the allegations in his or her pleadings, but is required to present "concrete evidence" from which a judge or reasonable jury could return a favorable decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Thus, "[i]f

evidence is merely colorable . . . or is not significantly probative, summary

judgment may be granted." *Id*.

## IV.    ARGUMENT

### A.    ROCKSTAR HAS PRODUCED NO DOCUMENTS AND TAKEN NO DISCOVERY; ROCKSTAR HAS NO FACTS WITH WHICH TO OPPOSE SUMMARY JUDGMENT

Celsius served its First Document Request on February 27, 2019 and

its Second Document Request on March 5, 2019.  (Declaration of Jonah A.

Grossbardt ("Grossbardt Decl."), ¶ 2).  Rockstar responded by objecting to

some requests, and stating it would produce documents responsive to

other requests, but to date Rockstar has not produced a  single document

responsive to Celsius' requests.  (Grossbardt Decl., ¶¶ 3 &4).  The parties

discussed Rockstar's production on July 9, 2019, and counsel for Rockstar

said his client was going to produce documents, but Rockstar never did.

(Grossbardt Decl., ¶ 5 & 6).  Rockstar's failure to produce documents was

raised again in August 2019 and Rockstar stated it would begin producing

documents by August 30, 2019.  (Grossbardt Decl., ¶ 6).  It was raised

again in September, and each time Rockstar promised to produce

documents, but no production ever occurred. (Grossbardt Decl., ¶ 7).  The

only conclusion that can be drawn from Rockstar's lack of production is

that it has no evidence to support its claims.

Celsius served its First Set of Interrogatories on February 27, 2019.

(Grossbardt Decl., ¶ 8).  Rockstar responded by failing to properly answer

1    any of the interrogatories.  In fact, Rockstar recapitulated the allegations

2    in its Complaint.  Rockstar set forth no evidence to support its claims in its

3    responses to Celsius' interrogatories.  (Grossbardt Decl., ¶ 9).

4        Rockstar did not bother to pursue discovery of Celsius either.

5    Rockstar never served a 30(b)(6) notice for deposition of Celsius, or even

6    asked Celsius to produce a witness for questioning. (Grossbardt Decl.,

7    ¶10).

8        Rockstar failed to comply with expert disclosure deadlines in this

9    case.  The parties asked the Court to extend the expert deadline to July

10   24, 2019.  The Court granted that request (ECF 27).  Rockstar failed to

11   comply with this deadline and did not submit any expert disclosures.

12   Grossbardt Decl. ¶ 11).

13

14       Rockstar is a well-represented plaintiff that is represented by

15   extremely capable counsel that has made the conscious decision to not

16   diligently prosecute its case.  Rockstar should not be rewarded for its

17   dilatory conduct.

18   ## B.   ROCKSTAR LACKS A COMPETITIVE INJURY SUFFICIENT FOR
     ## FALSE ADVERTISING STANDING

19

20       To bring suit in federal court, Article III requires plaintiffs to establish a

21   "case" or "controversy". *Lexmark Int'l, Inc. v. Static Control Components,*

22   *Inc.*, 572 U.S. 118, 125 (2014). To establish a case or controversy, a plaintiff

23   must first demonstrate that he or she "suffered or be imminently

24   threatened with a concrete and particularized 'injury in fact'". *Id.* The

plaintiff must then show this injury is "fairly traceable to the challenged action of the defendant." *Id*. Lastly, a plaintiff must show that he or she is likely to be redressed by a favorable judicial decision." *Id*. Rockstar lacks a recognizable injury-in-fact for standing under the Lanham Act.

To establish an injury-in-fact in a false advertising suit, a plaintiff must demonstrate "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005); *Lexmark Int'l, Inc.*, 572 U.S. at 140 ("To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove)…an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.").

To prove a commercial injury, a plaintiff must show that "some consumers who bought the defendant['s] product under [a] mistaken belief fostered by the defendant would have otherwise bought the plaintiff['s] product." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011)(internal quotations omitted). To establish this a plaintiff can either demonstrate that this was the "actual market experience," or that "defendant's false advertising … harm[ed] plaintiff's business."[2] *Id*. This

---

2 Even though courts "generally presume commercial injury when defendant and plaintiff are direct competitors," courts do so only where "defendant's misrepresentation has a tendency to mislead consumers". *TrafficSchool.com*, 653 F.3d at 825. Rockstar has

is traditionally done by the use of survey evidence. *See TrafficSchool.com,* 653 F.3d at 825 (relying on plaintiff's market survey and testimony about actual customer confusion to predict future behavior); *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 997-98 (N.D. Cal. 2013)(noting that the court in *TrafficSchool* considered a market survey "enough to create a reasonable chain of inferences indicating that DMV.org could capture a larger portion of the driver's ed market by misrepresenting itself"); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 191 (2d Cir. 1980)( standing based on market surveys, decrease in product sales, and testimony).

Rockstar has not produced any surveys or other evidence of consumers being misled by Celsius' claims to Rockstar's detriment. Expert disclosure deadlines have come and gone but Rockstar has disclosed no survey expert or survey findings. Rockstar has not and cannot establish its claimed injury based on actual market experience, for it has offered no such evidence. Rockstar has offered no evidence linking Celsius' claim of "healthy energy" or Celsius' use of images of fruit on its cans to evidence that actual consumers were misled. Rockstar refers to no evidence of consumers being misled in its complaint and has produced no such evidence in discovery. There is no evidence upon which a finding of false advertising for Rockstar can be based.

---

offered no evidence to show that Celsius' labels have a tendency to mislead consumers. This failure makes a presumption of future injury unwarranted here.

Rockstar has provided no evidence to support its claim of injury. Rockstar's argument is that it is a competitor and may lose customers because of Celsius' labeling, but Rockstar has not provided any testimony or surveys to show that customers would be more likely to consume Celsius because of the words on the label.[3]

## C.   CELSIUS' SUBJECTIVE CLAIMS ARE NOT ACTIONABLE

In the Lanham Act, Congress codified a cause of action for false advertising. *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). The Act provides a remedy for only those factual statements which make specific or absolute claims about a product's characteristics. *Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010). To be considered a factual statement, it must make "specific reference to a quantifiable or measurable feature or function" of a product. *A.H. Lundberg Assocs. v. TSI, Inc.*, No. C14-1160JLR, 2014 U.S. Dist. LEXIS 149603, at *14 (W.D. Wash. Oct. 20, 2014). If the statements are not quantifiable, they cannot be falsified. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). Unfalsifiable claims are not actionable under the Lanham Act. *Id.*  Put another way, in order for a claim to be judged false in violation of 15 U.S.C. § 1125(a), it must contain "specific reference to a quantifiable or measurable feature or function" of the

---

[3] Rockstar may very well have had increased sales during the period, see, e.g., *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 581 (7th Cir. 2001) (finding no injury-in-fact where plaintiff's prices and sales rose during the period of false advertising), but because Rockstar has not produced its sales information this fact has not been determined.

product at issue. *A.H. Lundberg Assocs. v. TSI, Inc.*, No. C14-1160JLR, 2014 U.S. Dist. LEXIS 149603, at *14 (W.D. Wash. Oct. 20, 2014).

Subjective claims about products, such as Celsius' claim that its product provides "healthy energy," cannot be proven either true or false, and it is therefore not actionable under the Lanham Act. *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995); *Cytyc Corp. v. Neuromedical Sys.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998); *Pom Wonderful LLC v. Coca Cola Co.*, 727 F. Supp. 2d 849, 869 (C.D. Cal. 2010); *Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) (holding that the "statement that Defendants' method for recycling appliances is a 'unique' system with 'unprecedented' results is non-actionable puffery because it is a 'general, subjective claim,' rather than a statement about 'specific or absolute characteristics'").

Celsius' claim that its product provides "healthy energy" is mere "puffing," or a general expression of opinion about a product. *See Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 74 (S.D.N.Y. 1988). Puffery is not actionable as false advertising under Section 43(a) of the Lanham Act. *See*, e.g., *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3rd Cir. 1993); *Cook, Perkiss & Liehe, Inc. v. Northern Calif. Collection Service, Inc.*, 911 F.2d 242, 245 (9th Cir. 1990); *Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F. Supp. 1201, 1209 (S.D.N.Y. 1986).

In order for a statement to be actionable, it must contain "specific assertions of unfavorable facts reflecting on the rival product." *American Express Travel Related Services Co., Inc. v. Mastercard International, Inc.*, 776 F. Supp. 787, 792 (S.D.N.Y. 1991). Celsius' claim that its product provides "healthy energy" can mean different things to different people and therefore cannot be proven either true or false, making it not actionable under the Lanham Act. *See W.L. Gore & Associates, Inc. v. Totes, Inc.*, 788 F. Supp. 800, 808 (D. Del. 1992) (finding that advertisement's assertion that product was breathable could mean different things to different people and was a subjective statement, not a statement of fact, for purposes of Lanham Act claim).

A classic example of an unfalsifiable claim is puffery. Puffery is a "general, subjective claim about a product". *Id*. These claims are difficult to measure concretely. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1128-29 (C.D. Cal. 2010). As such, they lack the objectivity and falsifiability required for claims to be actionable under the Lanham Act." *Newcal Indus.*, 513 F.3d at 1053.

Claims about nutrition, wholesomeness and health are considered non-actionable puffery under the Lanham Act, as well as state-law false advertising statutes. *See Healthier Choice Flooring, LLC v. CCA Glob. Partners, Inc.*, No. 1:11-CV-2504-CAP, 2013 U.S. Dist. LEXIS 193200, at *19 (N.D. Ga. Mar. 5, 2013) ("In isolation, the 'healthier' and 'breathe easier'

statements would constitute classic puffing"); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008)("Gerber's claim that Snacks is 'nutritious,' were it standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to measure concretely"); *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 U.S. Dist. LEXIS 15868, at *18-19 (N.D. Cal. Feb. 8, 2016)("the Court cannot agree with Plaintiff that the word wheat combined with wholesome wheat and healthy grains or Healthy White alongside images of wheat stalks and honey pots could lead a reasonable consumer to conclude that the breads contain a significant amount of whole wheat and are thus healthier than other white breads.")(internal quotation marks and citation omitted); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301 NC, 2016 U.S. Dist. LEXIS 55601, at *9 (N.D. Cal. Apr. 26, 2016) ("statements such as 'Great-Tasting Meat From Healthy Animals,'…are 'not actionable statements of fact, because they are not quantifiable, objective statements."); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1084 (N.D. Cal. 2017)(finding that "unbelievably nutritious" and "positively nutritious" are puffery.); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015)(not finding a label which included the phrase "essential nutrition blend" to be actionable*); Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015 U.S. Dist. LEXIS 74905, at *24 (E.D. Mo. June 10, 2015)( Finding that "100% Complete & Balanced Nutrition' is

mere puffery...because whether something is complete or balanced

nutrition is merely an opinion about quality and is not capable of being

proven true or false.").

Claims of nutrition and health are typically not factual assertions

capable of being falsified. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d

1117, 1128-29 (C.D. Cal. 2010) ("healthiness is difficult, if not impossible, to

measure concretely"); *Arcure v. Kellogg Co.*, No. 2:10-cv-192-FtM-36SPC,

2011 U.S. Dist. LEXIS 165996, at *18 (M.D. Fla. Mar. 29, 2011)(quoting *Tylka v.*

*Gerber Prods, Co.*, 1999 U.S. Dist. LEXIS 10718, at *26-27 (N.D. Ill., July 1,

1999) vacated on other grounds, 211 F.3d 445 (7th Cir. 2000))("Nutrition is

a nebulous concept...[s]tatements such as 'optimum nutrition,' or

'nutritionally you can't buy a better food than Gerber,' or the 'most

wholesome nutritious safe foods you can buy anywhere in the world,'...are

meaningless sales patter...no reasonable person would rely on such

subjective, all encompassing, statements").

Determining whether a statement is non-actionable puffery can be

determined as a matter of law. *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

*Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990)("District courts often

resolve whether a statement is puffery when considering a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can

think of no sound reason why they should not do so."); *Baker v. ADT Corp.*,

No. 15-CV-2038, 2015 U.S. Dist. LEXIS 180138, at *15 (C.D. Ill. Oct. 5, 2015)

("It is appropriate in the context of a motion to dismiss, for a court to decide, as a matter of law, whether a statement is non-actionable puffery.")(internal quotation marks and citation omitted).

Celsius' claim that its product provides "healthy energy" is classic example of non-actionable puffery. The statement is subjective and cannot be proven true or false. The term "healthy," like the term "nutritious," "is difficult, if not impossible, to measure concretely". *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1128-29 (C.D. Cal. 2010). "Healthy energy" is subjective and not quantifiable. It cannot reasonably mislead consumers. Celsius' placement of it on its label is classic puffery and not actionable under the Lanham Act.  Rockstar has not and cannot provide evidence to the contrary.

**D.    ROCKSTAR CANNOT ENFORCE VIOLATIONS OF THE FDCA WHICH ARE PREEMPTED**

Rockstar cannot assert a claim that Celsius product is misbranded because of the use of the "healthy energy" claim or the display of fruit on the label to show the flavors inside in violation of the Food, Drug & Cosmetics Act since it is well settled that there is no private cause of action under the FDCA. See *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013); *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013); *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013); *Hansen Bev. Co.*

*v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG (POR), 2009 U.S. Dist. LEXIS 127605, at *11 (S.D. Cal. Dec. 22, 2009).

Congress preempts state law where (1) it "enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citation omitted); *Chicanos Por la Causa, Inc. v. Napolitano*, 544 F.3d 976, 982 (9th Cir. 2008)("Federal preemption can be either express or implied.").Rockstar's state law claims are expressly preempted. Congress has provided extensive regulations governing the labelling of food products. *See* 21 U.S.C. § 301. In 1938, Congress passed the Food, Drug, and Cosmetics Act ("FDCA"). 21 U.S.C. § 301; *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 U.S. Dist. LEXIS 54029, at *9 (N.D. Cal. Apr. 16, 2013). "The FDCA sets guidelines for", among other things, "what nutrition information must be disclosed on food labels… and what voluntary nutrition and health-related claims may be made on food labels". *Bronson*, 2013 U.S. Dist. LEXIS 54029, at *9. Beyond that, the act "empowers the FDA (a) to protect public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled, 21 U.S.C. § 393(b)(2)(A); (b) to promulgate regulations implementing the statute; and (c) to enforce its regulations through administrative procedures." *Fisher v.*

*Monster Bev. Corp.*, No. EDCV 12-02188-VAP (OPX), 2013 U.S. Dist. LEXIS 130789, at *21 (C.D. Cal. July 9, 2013).

In 1990, Congress amended the FDCA and enacted the Nutrition Labeling and Education Act ("NLEA"). 21 U.S.C. § 343; *Bronson*, 2013 U.S. Dist. LEXIS 54029, at *9. The purpose was "to 'clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" *Fisher*, 2013 U.S. Dist. LEXIS 130789, at *21-22 (quoting *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 223 (2d Cir. 1998) (citing *H.R. Rep*. No. 101-538, at 7 (1990)).

More importantly, NLEA amended the FDCA and added a preemption provision. *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012) (citing 21 U.S.C. § 343-1). Under the provision, "states may not directly or indirectly establish any nutrition labeling requirements that are not identical to the requirements promulgated by the FDA." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 U.S. Dist. LEXIS 149732, at *30-32 (C.D. Cal. Sep. 4, 2014)(citing 21 U.S.C. § 343-1)(internal quotation marks omitted); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 612 (9th Cir. 2016)("the FDCA expressly preempts state-law requirements that conflict with certain FDCA provisions"). "Under FDA regulations, the term 'not identical to . . . means that the State requirement directly or indirectly imposes obligations or

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

contains provisions concerning the composition of labeling' that are 'not

imposed or contained in the applicable provision[s].'" *Lam*, 859 F. Supp.

2d at 1102 (citing 21 C.F.R. § 100.1(c)(4)).

Based on the preemption provisions, "courts have consistently held

that the NLEA preempts claims that would impose any labeling

requirements inconsistent with federal law." *In re 5-Hour Energy Mktg. &*

*Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732, at *30-32 (citing *Carrea v.*

*Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir.

2012)(holding that NLEA and FDCA preempted a claim that the phrase

"0g Trans Fat" was misleading where the statement was permitted under

FDA regulations); *see also Yumul v. Smart Balance, Inc.*, No. CV 10-00927

MMM (AJWx), 2011 U.S. Dist. LEXIS 109952, 2011 WL 104555, at *8-9 (C.D.

Cal. Mar. 14, 2011) (holding that the NLEA and FDCA preempted a claim

that the phrases "No Cholesterol" and "Cholesterol Free" were misleading

where the term "Cholesterol Free" was permitted by FDA regulations); *also*

*Hoffman v. Nordic Naturals, Inc.*, No. 12-CV-05870 SDW MCA, 2014 U.S.

Dist. LEXIS 53125, 2014 WL 1515602, at *3 (D.N.J. Apr. 17, 2014) ("NLEA's

preemption provision applies to the labeling of dietary supplements."); 

*Trujillo v. Walgreen Co.*, No. 13 CV 1852, 2013 U.S. Dist. LEXIS 112404, 2013

WL 4047717, at *1 (N.D. Ill. Aug. 9, 2013), appeal dismissed (Nov. 18, 2013) (

NLEA contains "an express preemption provision which prohibits states

from imposing, directly or indirectly, requirements as to [supplement]

labels like the Statement that is not identical to the federal

requirements.").

Preemption "occurs where application of state laws would impose

more or inconsistent burdens on manufacturers than the burdens imposed

by the FDCA." *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 U.S.

Dist. LEXIS 29326, at *11 (N.D. Cal. Mar. 10, 2015); *Chacanaca v. Quaker

Oats Co.*, 752 F. Supp. 2d 1111, 1121-23 (N.D. Cal. 2010) (finding that state

law claims that sought to impose labeling requirements not identical to

FDA regulations were expressly preempted); *Fisher*, 2013 U.S. Dist. LEXIS

130789, at *24-25 (quoting *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th

780, 795, 122 Cal. Rptr. 2d 72 (2002)) ("preemption only occurs when a

state law claim requires a party to go beyond the FDA regulations by, for

example, 'includ[ing] additional or different information on a federally

approved label'"). "[W]here a plaintiff seeks to challenge a statement

that has been approved by the FDA under the FDCA, the claim may be

preempted." *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 U.S. Dist.

LEXIS 29326, at *12 (N.D. Cal. Mar. 10, 2015).

Here, the term "healthy energy" and the imagery of fruit on the

label are both governed by and permitted under the FDCA. *See* 21 C.F.R.

§ 101.65(d)(2); 21 C.F.R. § 101.22(i)(1)(i-iii). The Nevada State law claims

are therefore preempted. *Pratt v. Whole Foods Mkt. California, Inc.*, No.

5:12-CV-05652-EJD, 2014 U.S. Dist. LEXIS 46409, 2014 WL 1324288, at *5 (N.D.

Cal. Mar. 31, 2014) ("courts in this district have generally found express preemption under the FDCA only when: (1) the FDA requirements with respect to a particular food label or package are clear; and (2) the product label or package at issue is in compliance with that policy, such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require."). The preemption includes claims brought under statutes, common-claims and judge made rules such as the Nevada claims here. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 443, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005)); *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 U.S. Dist. LEXIS 54029, at *11-12 (N.D. Cal. Apr. 16, 2013)("The term 'requirements' reaches beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules.").

### 1.   THE FDA HAS REGULATED LABELING FOR THE TERM "HEALTHY"

The FDA has clearly outlined the labelling requirements for placing the term "healthy."  Under 21 C.F.R. § 101.65(d)(2), food labeling "may use the term 'healthy' or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness') as an implied nutrient content claim if, among other things, the food meets the regulatory definitions for low fat and low in saturated fat, and contains a certain minimum amount of nutrients". *Delacruz v. Cytosport, Inc.*, No. C

11-3532 CW, 2012 U.S. Dist. LEXIS 90847, at *10 (N.D. Cal. June 28, 2012);

*Yumul*, 2011 U.S. Dist. LEXIS 109952, at *26-28 ("A claim that a product is

'healthy' is generally an implied nutritional content claim.")(internal

quotation marks and citation omitted).

 Where parties seek to enjoin others from using the term healthy

under state law where the FDA specifically allows them to, their claims are

preempted. *See Yumul v. Smart Balance, Inc.,* No. CV 10-00927 MMM

(AJWx), 2011 U.S. Dist. LEXIS 109952, at *35-37 (C.D. Cal. Mar. 14, 2011)

("Because Yumul seeks to enjoin Smart Balance from labeling its product

"healthy" — something the FDA regulations expressly permit Smart Balance

to do — a liability finding in this case would impose a requirement "that is

not identical" to federal law requirements. As a result, so long as Smart

Balance's product meets the conditions imposed by the FDCA and

accompanying regulations, the claim is expressly preempted by the FDCA

and the NLEA.").

### 2. THE CLAIM "HEALTHY ENERGY" IS A PERMITTED STRUCTURE FUNCTION CLAIM REGULATED BY FDA

 The Dietary Supplement Health and Education Act of 1994 (DSHEA)

added section 403(r)(6) to the FDCA. This section of the law states that a

dietary supplement may bear certain statements on its label or in its

labeling if the claim meets certain requirements. 21 C.F.R. § 101.93(f)

provides for the types of claims that may be made under section 403(r)(6)

of the FD&C Act as follows:

1
2
3
4
5
6
7
8

(f) Permitted structure/function statements. Dietary supplement labels or labeling may, subject to the requirements in paragraphs (a) through (e) of this section, bear statements that describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or that characterize the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, provided that such statements are not disease claims under paragraph (g) of this section. If the label or labeling of a product marketed as a dietary supplement bears a disease claim as defined in paragraph (g) of this section, the product will be subject to regulation as a drug unless the claim is an authorized health claim for which the product qualifies.

9
10
11
12
13
14
15
16
17
18
19
20

Celsius and dietary supplements like it are considered 'food' for the purposes of the FDCA.  21 U.S.C. § 321(ff) ("[A] dietary supplement shall be deemed to be a food within the meaning of this chapter."); *see also In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732, at *30-32 ("Dietary supplements like 5-hour ENERGY are considered 'food' for the purposes of the FDCA."). The fact that it is a liquid does not change that. *See In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732, at *30-32 ("Dietary supplements like 5-hour ENERGY are considered 'food' for the purposes of the FDCA."); *see also Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 U.S. Dist. LEXIS 90847, at *10 (N.D. Cal. June 28, 2012) (applying 21 C.F.R. § 101.65(d)(2) to Muscle Milk).

21
22
23
24

The "healthy energy" claim for Celsius is a structure function claim permitted by DSHEA and substantiated by the studies for Celsius. The clinical studies for Celsius examined both the short term and long term effects of Celsius consumption, both when combined with exercise, and

without exercise, in both men and women. The conclusion drawn from these studies is that consumption of Celsius, prior to exercise, increases metabolism, and that this metabolism boost translates into physiological benefits including fat loss, body fat percentage decrease, greater endurance and resistance to fatigue. The studies for Celsius document this effect on the structure and function of the body and substantiate the Celsius claim that consumption of Celsius provides "healthy energy."

Rockstar has no basis to dispute this claim, but even if it did, the claim is preempted.

### 3.   THE FDA HAS REGULATED LABELING USING IMAGES OF FRUIT

Regarding placing images of fruit to denote flavor, the "FDA regulations permit illustrations of fruit on product label to indicate that product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit." *McKinniss v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 U.S. Dist. LEXIS 96106, at *12 (C.D. Cal. Sep. 19, 2007)(citing 21 C.F.R. § 101.22(i)(1)(i-iii)); *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 U.S. Dist. LEXIS 96108, 2007 WL 4766525, *4 (C.D. Cal. Sept. 4, 2007) ("FDA regulations permit illustrations of fruit on product labels to indicate that product's 'characterizing flavor'"); *see also Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 891 (C.D. Cal. 2013)("Courts have repeatedly found that state law claims challenging 'natural flavors' labels, accompanied by

images or names of fruit, are preempted, because such labeling

references the characterizing flavor of the food and is permitted by §

101.22"); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,

No. CV 16-1442 PSG (MRWx), 2017 U.S. Dist. LEXIS 174394, at *17 (C.D. Cal.

Oct. 10, 2017)(citing 21 C.F.R. § 101.22(i), (i)(1)(i))("federal law expressly

permits labeling to describe 'the primary recognizable flavor(s), by word,

[or] vignette,' even if the product" contains no such ingredient.")(citation

omitted).

   Celsius products comply with the nutritional requirements for

labeling outlined in 21 C.F.R. § 101.65(d)(2) and 21 C.F.R. § 101.22(i)(1)(i-iii).

As such, Rockstar cannot invoke state law to place any additional

labelling requirements on Celsius. *See Yumul*, 2011 U.S. Dist. LEXIS 109952 at

*35-37 ("Because Yumul seeks to enjoin Smart Balance from labeling its

product "healthy" — something the FDA regulations expressly permit

Smart Balance to do — a liability finding in this case would impose a

requirement "that is not identical" to federal law requirements. As a result,

so long as Smart Balance's product meets the conditions imposed by the

FDCA and accompanying regulations, the claim is expressly preempted

by the FDCA and the NLEA.").

   Rockstar's state law claims regarding the term "healthy energy"

and the imagery of fruit are thus preempted.

**V.     ROCKSTAR'S STATE LAW CLAIMS SHOULD BE DISMISSED OR THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THEM**

The Court should dismiss the Nevada state law claims as they are analogous to the Lanham Act claim.  *See Alexander v. Falk*, 2019 U.S. Dist. LEXIS 132201 *15 (D. Nev. August 7, 2019); *see also Aristocrat Techs., Inc. v. High Impact Design & Entm't*, 2009 U.S. Dist. Lexis 53306 *10 (D. Nev. June 22, 2009).  As explained above, Rockstar has failed to state an actionable claim pursuant to the Lanham Act.  The Court should dismiss the state law claims because they are based on analogous arguments and are subject to dismissal.

The Court should also decline to exercise supplemental if it dismisses the Lanham Act claim over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3*); see also Trump Ruffin Commer., LLC v. Local Joint Exec. Bd. Las Vegas*, 2016 U.S. Dist. LEXIS 104087 * 9 (D. NV. August 8, 2016).  The Court only has original jurisdiction over Rockstar's Lanham Act claim.  The Court should decline to exercise supplemental jurisdiction over the remaining state law claims when it dismisses Rockstar's Lanham Act claim. *See Carnegie-Mellon v. Cohill*, 484 U.S. 343, 364 n.7, (1988).

**VI.     CONCLUSION**

For the reasons set forth herein the Court should grant Celsius' Motion for Judgment on the Pleadings or for Summary Judgment and dismiss all of Rockstar's claims.

DATED:  October 2, 2019                    Respectfully submitted,

                                           */s/ Joel B. Rothman*
                                           JOEL B. ROTHMAN
                                           **SRIPLAW**
                                           21301 Powerline Road
                                           Suite 100
                                           Boca Raton, FL  33433
                                           561.404.4350 – Telephone
                                           561.404.4353 – Facsimile

                                           JONAH A. GROSSBARDT
                                           **SRIPLAW**
                                           1801 Century Park East
                                           Suite 1100
                                           Los Angeles, CA  90067
                                           323.364.6565 – Telephone
                                           561.404.4353 – Facsimile

                                           and

                                           Marc J. Randazza, NV Bar No. 12265
                                           Ronald D. Green, NV Bar No. 7360
                                           **RANDAZZA LEGAL GROUP, PLLC**
                                           2764 Lake Sahara Drive
                                           Suite 109
                                           Las Vegas, NV 89117

                                           *Attorneys for Defendant Celsius
                                           Holdings, Inc.*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on October 2, 2019, a true and correct copy of the foregoing document has been sent via electronic mail to all parties listed on the Service List below.


                                           */s/ Joel B. Rothman*
                                           JOEL B. ROTHMAN

## SERVICE LIST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Mr. Ian K. Boyd
Ms. Ellen P. Liu
Sideman & Bancroft LLP
One Embarcadero Center
22nd Floor
San Francisco, CA  94111
jboyd@sideman.com
eliu@sideman.com

*Counsel for Plaintiff Rockstar, Inc.*

Mr. Michael M. McCue
Lewis Roca Rothgerber Christie LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89109
mccue@lrrc.com

*Counsel for Plaintiff Rockstar, Inc.*

Celsius' Motion for Judgment on the Pleadings and for Summary Judgment
2:18-cv-02371-GMN-NJK